IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GEORGE E. HAYNES IV,

      Plaintiff,

vs.                                  No. CIV 01-654 LCS/KBM

**STATE OF NEW MEXICO DEPARTMENT
OF HEALTH**, **J. Alex Valdez, as SECRETARY,
STATE OF NEW MEXICO DEPARTMENT OF
HEALTH; FELIX ALDERETE; RICHARD C.
PEMBROOK, M.D.; ERIC WESTFRIED, PhD;
BEN MONDRAGON, and JOHN DOES I, II, and III,
as individuals acting under color of state law,**

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants New Mexico Department of Health, J. Alex Valdez, Felix Alderete, Ben Mondragon, and John Does I, II, and III's Motion to Dismiss filed January 4, 2002 (*Doc. 15*). The United States Magistrate Judge, acting upon consent and designation pursuant 28 U.S.C. § 636(c), and having considered the pleadings, briefs, relevant law, and being otherwise fully advised, finds that this Motion should be **DENIED IN PART and GRANTED IN PART**.

## I. BACKGROUND

On February 2, 1998, the Plaintiff was admitted, pursuant to a court order, to the Las Vegas Medical Center (LVMC). *See* Compl. ¶ 9. The Plaintiff has a history of mild mental retardation and allegedly inappropriate sexual behavior. *See* Compl. ¶ 13. Defendant Valdez is the Secretary of the Department of Health. *See* Compl. ¶ 5. Defendant Alderete was the Administrator of LVMC at the time of Plaintiff's admission. *See* Compl. ¶ 10. Defendant Pembrook was the Plaintiff's attending

physician, and Defendants Mondragon and Westfried were the Plaintiff's attending therapists. *See* Compl. ¶ 11. According the complaint, Defendants John Does I, II, and III were staff members of LVMC and were responsible for the supervision and monitoring of the patients. Haynes alleges that Defendants Pembrook, Mondragon, Westfried and John Does I, II, and III had knowledge of the Plaintiff's mental condition and his need for careful supervision. *See* Compl. ¶ 13.

The Plaintiff alleges that on February 18, 1998, he was raped in his room by another resident of LVMC. *See* Compl. ¶ 14. He also alleges that "this incident occurred because of the absence of security and supervision at LVMC and a failure of Defendants Alderete, Pembrook, Mondragon, Westfrief, and Does I, II, and II to implement and enforce procedures and policies adequate to protect the residents of LVMC from this type of danger." *See* Compl. ¶ 15.

Haynes also alleges that "[t]his incident occurred as a result of the failure of Defendants Department of Health and Valdez to monitor and correct deficiencies at LVMC in connection with its provisions of services to residents of the facility and Valdez's [sic] failure to implement and enforce adequate standards to ensure that Plaintiff's placement would result in quality services that would protect his health and safety." *See* Compl. ¶ 16.

On January 4, 2002, Defendants New Mexico Department of Health, Valdez, Alderete, Mondragon, and John Does I, II, and III filed this Motion to Dismiss, arguing that Defendants Alderete and Valdez should be dismissed because the complaint fails to allege any personal connection to the wrongful act; and that Defendants Valdez, Alderete, Mondragon, and John Does I, II, and III, in their individual capacities, should be dismissed because they are protected from suit by qualified immunity. These Defendants also argue that they should not be held liable for the independent actions of third parties.

## II. STANDARD FOR DISMISSAL UNDER
## FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Granting a motion to dismiss for failure to state a claim is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice. *See Ramirez v. Oklahoma Dept of Mental Health*, 41 F. 3d 584, 586-87 (10th Cir. 1994) (internal quotations omitted); *see also Ayala v. Joy Mfg. Co.*, 877 F. 2d 846, 847-48 (10th Cir. 1989). When ruling on a Rule 12(b)(6) motion, a court must construe the plaintiff's complaint liberally and all well-pleaded allegations in the complaint must be accepted as true. *See Albright v. Oliver*, 510 U. S. 266, 268 (1994); *see also Tonkovich v. Kansas Bd. of Regents*, 159 F. 3d 504, 510 (10th Cir. 1998). While all reasonable inferences must be indulged in favor of the plaintiff, conclusory allegations need not be taken as true. *See Weatherhead v. Globe Intl, Inc.*, 832 F. 2d 1226, 1228 (10th Cir. 1987); *see also Swanson v. Bixler*, 750 F. 2d 810, 813 (10th Cir. 1984). A claim may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984); *see also H. J., Inc. v. Northwestern Bell Tel. Co.*, 492 U. S. 229, 249- 50 (1989).

Special rules apply when a defendant raises the defense of qualified immunity. Once the defendant pleads qualified immunity, the burden shifts to the plaintiff to demonstrate both that the defendant's conduct violated the law and that the relevant law was clearly established when the alleged violation occurred. *See Wilson v. Layne*, 526 U. S. 603, 609 (1999); *see also Ramirez v. Department of Corrections*, 222 F. 3d 1238 (10th Cir. 2000). In showing that the law was clearly established, the plaintiff does not have to show that the specific action at issue has been held unlawful, but the alleged unlawfulness of the defendant's conduct must be apparent in light of preexisting law.

*See Armijo v. Wagon Mound Pub. Sch.*, 159 F. 3d 1253, 1260 (10th Cir. 1998). The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *See Anderson v. Creighton*, 483 U. S. 635, 640 (1987). To show a right is clearly established, there must be Supreme Court or Tenth Circuit law on point, or the weight of authority from other courts must support the Plaintiffs proposition. *See Armijo*, 159 F. 3d at 1260. Unless both prongs of the test are satisfied, qualified immunity must be granted.

When a qualified immunity defense is raised in the context of a Rule 12(b)(6) motion to dismiss, a court must assume the truth of the plaintiff's allegations in determining whether the official's conduct violated clearly established law. *See Neiberger v. Hawkins*, 246 F. 3d 682 (10th Cir. 2001)(unpublished opinion) (*citing Gagan v. Norton*, 35 F. 3d 1473, 1475 ( 10th Cir. 1994). The Court no longer applies a heightened pleading standard to a plaintiff's complaint where the defendant has asserted a qualified immunity defense. *See Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001)(*citing Crawford-El v. Britton*, 523 U.S. 574, (1998)). Thus, the current standard to apply in this case is the following: "'[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *See Currier*, 242 F.3d at 917 (*citing Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

### III. ANALYSIS

#### A. Whether Defendants Valdez, Alderete, Mondragon, and John Does I, II, and III are entitled to qualified immunity?

Defendants Valdez, Alderete, Mondragon, and John Does I, II, and III argue that they are protected from suit by qualified immunity. Motions to dismiss involving a qualified immunity defense

4

are determined somewhat differently than other motions to dismiss. *See Wilson*, 526 U. S. at 609; *see also Ramirez*, 222 F. 3d at 1241. When a defendant raises qualified immunity, the burden shifts to the plaintiff to meet a strict two-part test. *See id*. The first question is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendants' conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. \_\_\_\_, 121 S. Ct. 2151, 2156, 63 U.S.L.W 3329 (2001); *Wilson*, 526 U.S. at 609; *Siegert v. Gilley*, 500 U.S. at 231-33; *Romero v. Fay*, 45 F. 3d at 1475. In the course of determining whether a constitutional right was violated on the facts alleged, the Court may set forth legal principles that will become the basis for a holding that a right is clearly established, but the focus in the first inquiry is whether a constitutional violation has been alleged. *See Saucier*, 121 S. Ct. at 2156.

If a constitutional violation has been alleged based on a favorable view of the parties' submissions, the next sequential step is to ask whether the right that the defendant allegedly violated was clearly established at the time of the conduct at issue. *See Saucier*, 121 S. Ct. at 2156; *Wilson*, 526 U.S. at 603*; Albright v. Rodriguez*, 51 F. 3d 1531, 1534-35 (10th Cir.1995). In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether "the right [was] sufficiently clear that a reasonable [state actor] would understand that what he is doing violates that right." *Wilson*, 526 U.S. at 615; *see also Saucier*, 121 S. Ct. at 2156. If, and only if, the plaintiff establishes both elements of the test does the defendant then bear the traditional burden of showing "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Albright*, 51 F. 3d at 1535.

Following the sequential approach, the first question is whether, assuming the truth of the

5

Plaintiff's allegations, the facts alleged show Defendants' conduct violated a constitutional right. *See Saucier*, 121 S. Ct. at 2156. Plaintiff alleges that Defendants are liable because they placed him at LVMC and thereby allowed another patient to rape him. At this point, it is appropriate to define the constitutional right in question. *See id.*

I begin my analysis by reiterating the well-established principle that the Due Process Clause does not impose an affirmative duty upon the state to protect its citizens. Rather, it serves as a limitation on the state's power to act. *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S.189, 195, 109 S.Ct. 998, 1002, 103 L.Ed.2d 249 (1989). However, when the state enters into a "special relationship" with a particular citizen, it may be held liable for failing to protect him or her from the private actions of third parties. *See Uhlrig v. Harder*, 64 F. 3d 567, 572 (10th Cir.1995). This liability attaches under § 1983 when the state fails, under sufficiently culpable circumstances, to protect the health and safety of the citizen to whom it owes an affirmative duty. *See DeAnzona v. Denver*, 222 F. 3d 1229, 1234 (10th Cir. 2000) (*quoting Maldonado v. Josey*, 975 F. 2d 727, 732-33 (10th Cir.1992)). The Tenth Circuit has recognized prisoners, individuals committed against their will to mental institutions, and children in state run foster care as having a "special relationship" with the state. *See DeAnzona v. Denver*, 222 F. 3d at 1234.

Therefore, I must decide whether the allegations in the complaint are adequate in that they sufficiently allege the Defendants had such a "special relationship" with the Plaintiff while he was in its custody. In *Youngberg v. Romeo*, 457 U.S. 307 (1982), the mother of a mentally retarded man, who was injured in part by his own violence, brought suit against the superintendent of the institution, the Director of Resident Life, and the Director for the unit in which the plaintiff's son resided. *See Youngberg*, 457 U.S. at 324. All three were administrators who had varying degrees of supervisory

authority over the treatment provided to the patient. In arriving at the proper standard for analyzing whether the state adequately had protected the patient's rights, the Court determined that liability hinges on the "professional judgment" standard. "[L]iability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323. The Court in *Youngberg*, defined a professional decision maker as "a person competent, whether by education, training or experience, to make the particular decision at issue." *Id*. What is implicit in *Youngberg* is that the alleged constitutional violation is related to some aspect of the treatment decision made by a professional decision maker.

The Tenth Circuit adopted this standard in *Yvonne L.,By and Through Lewis v. N.M. Dep't of Human Servs.*, 959 F. 2d 883, 893-94 (10th Cir. 1992). The court in *Yvonne L.* decided that children in foster care have a substantive due process right under the Fourteenth Amendment to be reasonably safe from harm by state officials such as social workers. The court adopted the "professional judgment" standard by stating that "[t]he standard set out in *Youngberg* was that state officials would be shielded from liability unless the defendants showed that they failed to exercise professional judgment." *See Yvonne L.*, 959 F.2d at 893. The court also stated that

> 'Failure to exercise professional judgment' does not mean mere negligence as we understand *Youngberg;* while it does not require actual knowledge the children will be harmed, it implies abdication of the duty to act professionally in making the placements. . . . The compelling appeal of the argument for the professional judgment standard is that foster children, like involuntarily committed patients, are 'entitled to more considerate treatment and conditions' than criminals. *Id.* at 894 (citing *Youngberg,* 457 U.S. at 321-22).

According to the Supreme Court and the Tenth Circuit, "the proper standard for determining whether a State adequately has protected the rights of the involuntarily committed" is whether

7

"professional judgment in fact was exercised." *See Youngberg*, 457 U.S. at 321-22; and *Yvonne L.*, 959 F.2d at 894. Thus, the complaint must sufficiently allege that 1) Defendants consciously disregarded a known or obvious risk to the Plaintiff's safety **or** 2) Defendants abdicated their duty to act professionally, thereby causing Plaintiff harm. *See Youngberg*, 457 U.S. at 321-22; and *Yvonne L.*, 959 F. 2d at 890 and 893-94.

After a broad reading of the Plaintiff's complaint,[1] I conclude the Plaintiff has alleged sufficient facts to survive a motion to dismiss based on qualified immunity. Moreover, I find there are sufficient facts to withstand a Rule 12(b)(6) motion to dismiss regarding failure to protect from unreasonable risks to safety. For example, the Plaintiff makes the following allegations within the complaint: he was raped in his room by another LVMC resident, s*ee* Compl. ¶ 14; Defendant Mondragon had knowledge of his history of mild retardation and alleged inappropriate sexual behavior which required careful supervision, s*ee* Compl. ¶ 13; Defendants Alderete, as Administrator of LVMC, Mondragon, as the Plaintiff's attending therapist, and Valdez, as Secretary of the Health Department, knew or should have known, "had they exercised professional judgment, that the facility and environment was unsafe." *See* Compl. ¶¶ 22 and 24.[2] He continues to allege that the rape was due to these Defendants' failure to provide adequate security, to provide adequate screening and supervision of residents, to implement proper policy and standards for the safety and well-being of

---

[1] The court reviews the Plaintiff's complaint under the traditional motion to dismiss standard: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). The heightened pleading requirement is no longer viable when defendants raise the defense of qualified immunity. *See id.*

[2] The Plaintiff also alleges that Defendant Valdez failed "to monitor and correct deficiencies at LVMC in connection with its provisions of services to residents of the facility. . . . [and] to implement and enforce adequate standards to ensure that Plaintiff's placement would result in quality services that would protect his health and safety." *See* Compl. ¶ 16.

8

residents, and to provide qualified staffing. *See* Compl. ¶¶ 22 and 24.

Although these allegations sufficiently state a claim against Defendants Valdez, Alderete, and Mondragon in that they violated the Plaintiff's substantive due process right to reasonable personal security, I find the Plaintiff fails to allege sufficient facts regarding Defendants John Does I, II, and III's behavior. There are no allegations of specific facts relating to these Defendants' failure to exercise professional judgment.[3] These Defendants should be dismissed.

The second aspect of the qualified immunity inquiry is whether, at the time of the incident in February of 1998, the constitutional right in question was sufficiently clear that reasonable persons in the Defendants' positions would understand that their conduct, as alleged by Plaintiff, violated that right. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999); *see also Saucier*, 121 S. Ct. at 2156. In 1982, the Supreme Court held that developmentally disabled persons committed to state institutions have a substantive due process right to reasonable care and safety. *See Youngberg*, 457 U.S. at 324. In addition, the Tenth Circuit reiterated this standard with respect to state controlled mental facilities in the *Yvonne L.* case in 1992. *See Yvonne L.*, 959 F.2d at 894.

The Defendants, one of the Plaintiff's therapist, the Administrator of the LVMC, and the Secretary of the Department of Health, should all know that committed individuals enjoy a constitutionally protected interest in conditions of reasonable care and safety, and that allowing or implementing policies resulting in the acts alleged in the complaint would violate that interest. I therefore conclude that Plaintiff's constitutional rights were clearly established and that reasonable

---

[3] I emphasize that there are no arguments by the Defendants supporting the dismissal of Defendant New Mexico Department of Health. In addition, the Defendants, in their official capacity, have waived their Eleventh Amendment immunity defense by voluntarily removing this case to federal court. *See McLaughlin v. Board of Trustees of State Colleges of Co.*, 215 F. 3d 1168, 1172 (10th Cir. 2000).

persons in the Defendants' positions should have and would have known that their conduct violated that right. Assuming the truth of the Plaintiff's allegations in determining whether the officials' conduct violated clearly established law, I find the Plaintiff has upheld his burden at this stage of litigation. The complaint sufficiently alleges that Defendants Valdez, Alderete, and Mondragon's conduct violated the Plaintiff's constitutional rights and that the relevant law was clearly established when the alleged violation occurred. *See Wilson v. Layne*, 526 U. S. 603, 609 (1999).

The Defendants also claim they should not be held liable for third party actions. However, as previously stated, the Defendants may be liable pursuant to the "special relationship" doctrine. The Tenth Circuit has reiterated that committed individuals "enjoy constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." *See Youngberg,* 457 U.S. at 324. Therefore, I am unpersuaded by the Defendants' argument at this stage of the litigation.

### B. Whether Defendants Valdez and Alderete are entitled to dismissal

Defendants also urge the dismissal of Defendants Valdez and Alderete by reading the Plaintiff's complaint as based on *respondeat superior* liability rather than actual participation in the violation. At this point in this case, I am not convinced. The complaint contains sufficient facts for establishment of these Defendants' personal liability. There are several allegations relating to these Defendants' knowledge of the improper treatment at LVMC, their acquiescence in such treatment, and their supervisory roles over the implementation and administration of care at LVMC. These allegations do not focus on *respondeat superior* liability but, rather, would place responsibility for the alleged constitutional violations on the Defendants' directly in light of their participation in the establishment of Plaintiff's and other patient's treatment programs and overall living conditions at

10

LVMC. However, after discovery, it may be shown that these Defendants had no actual or personal knowledge of Haynes' circumstances, did not make any decisions concerning Haynes' treatment needs or placements, and did not participate in any decisions concerning Haynes' treatment needs or placements. If that is the case, it is an issue to be further litigated on summary judgment not on a motion to dismiss. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978)(Section 1983 does not permit recovery based on *respondeat superior*).

**IT IS, THEREFORE, ORDERED** that Defendants New Mexico Department of Health, J. Alex Valdez, Felix Alderete, Ben Mondragon, and John Does I, II, and III's Motion to Dismiss filed January 4, 2002 (*Doc. 15*) is **DENIED** in part and **GRANTED** in part.

**IT IS FURTHER ORDERED** that Defendants John Does I, II, and III are **DISMISSED** subject to any motion to amend the complaint or join parties.

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**